UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LLOYDELL LEONARD GILLIES,<br>     Petitioner,<br><br>     v.<br><br>DAVID N. STRANGE,[1]<br>     Respondent. | CIVIL ACTION NO.<br>3:05cv1273 (SRU) |

**MEMORANDUM OF DECISION**

On August 11, 2005, Lloydell Leonard Gillies (A91 188 420) filed a petition for a writ of habeas corpus seeking deportation to Jamaica. Gillies has served almost five years of a six-year sentence imposed by the Connecticut Superior Court. Despite being voted to parole since June 1, 2005 and subject to a final order of removal since January 2003, he has neither been released from incarceration nor deported.

In response to my order to show cause, the Bureau of Immigration and Customs Enforcement ("BICE") challenged whether this court has subject matter jurisdiction to order deportation, arguing that Gillies is still serving his state sentence of incarceration. For the reasons that follow, I find that this court has jurisdiction to hear Gillies' petition for habeas corpus, because he is in the legal custody of BICE. However, I reserve on deciding the merits of the petition, because BICE has represented to the court that it is making every effort to remove Gillies expeditiously.

**I.     Background**

Gillies, a citizen of Jamaica, is being held at Osborn Correctional Institution. He has

---

[1] Although Gillies did not initially include a federal respondent in the petition's caption, I have ordered Gillies to amend the petition to also name Attorney General Alberto Gonzales as a respondent.

been voted to parole by the State of Connecticut Department of Corrections ("DOC") and has attached a fully executed "Conditions of Parole" form to his habeas petition.

On January 8, 2003, an immigration judge ordered Gillies removed from the United States. Gillies did not appeal the decision, so the removal order became final on February 7, 2003. In light of the removal order, the former Immigration and Naturalization Service ("INS")[2] lodged an immigration detainer against him on February 20, 2003. Gillies now seeks removal to his native Jamaica and claims that the DOC would release him absent the immigration detainer.

On September 2, 2005, I ordered service on the United States Attorney for the District of Connecticut, the United States Attorney General, BICE, and the Office of the Chief State's Attorney. The Respondents were ordered to file a response to the petition, showing cause why the court should not grant the relief requested. On behalf of BICE, the United States Attorney filed a response on October 7, 2005, arguing in part that this court lacks jurisdiction over the habeas petition because Gillies is not in the custody of BICE.

On October 24, 2005, I ordered the Office of the Chief State's Attorney to file a response, addressing whether, but for the lodging of the immigration detainer, the State of Connecticut DOC would have released Gillies on parole. The Office of the Chief State's Attorney responded on Monday, November 14, 2005, confirming that the State of Connecticut DOC Board Of Parole voted Gillies to parole on June 1, 2005.

On November 18, 2005, I held a hearing attended by representatives of the DOC and BICE, as well as Gillies, who participated by video conference. I asked the DOC representative

---

[2] The enforcement functions of the INS have been replaced by the Bureau of Immigration and Customs Enforcement ("BICE"). The BICE is a bureau within the Department of Homeland Security.

to clarify the factual circumstances of Gillies' parole status and the DOC procedures for individuals voted to parole.[3]

Gillies became "eligible for parole" on January 27, 2004. His "eligibility for parole" was based on the fact that he had served one-half of his sentence. Not every person eligible for parole will be released on parole. A person eligible for parole becomes eligible for release only with the approval of the Board of Parole, a process known as being "voted to parole." Being voted to parole is discretionary, not a matter of right. In this case, however, Gillies was in fact voted to parole effective June 1, 2005. Gillies received his Conditions of Parole form, approved by the full panel of the Board of Parole at Carl Robinson Correctional Institution, on February 28, 2005. The Conditions of Parole form indicates that Gillies has been paroled "to his INS detainer." Gillies' Counselor Information Screen, which tracks the status of DOC prisoners, describes Gillies' disposition as "parole." *See* Memorandum in Support of Respondent's Motion to Dismiss Petition for a Writ of Habeas Corpus, Exhibit B.

"Voted to parole" means that an individual has been granted parole and will be physically released from incarceration when the DOC approves his "release plan." A "release plan" is primarily ministerial; it simply means that a parolee is assigned a parole officer, who must inspect and approve the parolee's post-release residence. *See* Office of the Chief State's Attorney's Response (November 14, 2005). In sum, the DOC has "paroled" Gillies, but it has not physically released him.

The DOC representative confirmed that, ordinarily, if a state prisoner is not subject to a

---

[3] There has been some confusion among courts about how an individual's parole status affects custody for habeas purposes, because there are several steps associated with parole. The precise facts in this case were therefore central to the court's analysis.

BICE detainer, the DOC begins the process of approving the prisoner's release plan when he is voted to parole. Absent the BICE detainer, Gillies' release plan would have been approved and Gillies would have been released pursuant to his Conditions of Parole on or around June 1, 2005.[4] Gillies has been on parole status for over six months, yet he has not been assigned a parole officer, has not had the opportunity to submit a potential civilian residence, and has not been allowed to have that potential residence approved. Thus, notwithstanding Gillies' parole status, the DOC has not followed its procedure for initiating the release process.[5]

The DOC representative also explained what happens procedurally when a state prisoner is voted to parole and is subject to a BICE detainer. DOC and BICE have an understanding that, when a state prisoner is voted to parole and the prisoner is subject to a BICE detainer, DOC notifies BICE and releases the prisoner to BICE at that point. Here, the DOC representative confirmed that DOC in fact informed BICE that Gillies was voted to parole and that BICE could pick him up as of June 1, 2005. BICE has not yet picked up Gillies because, according to the BICE representative, Gillies is not a priority.

As a factual matter, BICE has the power to pick up Gillies any day it wants, and could have done so lawfully for the past six months. Simultaneously, despite the fact that Gillies was

---

[4] The DOC representative could not confirm whether the DOC would have begun the release plan process before, on, or shortly after the June 1, 2005 date, but indicated that the process begins around the time when the individual is voted to parole. Gillies was voted to parole in late February, effective June 1, 2005.

[5] Once a paroled prisoner has been assigned a parole officer and has submitted his proposed post-release residence, his ultimate release is contingent upon the parole officer's approval of that residence. The problem here is that the DOC has not even started the release process, which is normally begun around the time when the prisoner is voted to parole, because the DOC understandably expected that BICE would act on its detainer by deporting Gillies.

paroled, the DOC has not released him, because of the BICE detainer.  As a result, although he has both been paroled and is subject to a final order of removal, Gillies remains incarcerated indefinitely in a state correctional institution supported by Connecticut taxpayers.

**II.     Discussion**

The factual scenario in this case raises the legal issue whether Gillies, despite being physically constrained in a state facility, is in BICE's legal custody for purposes of subject matter jurisdiction over his habeas petition.  I find that Gillies is in BICE custody for the following five reasons: (1) BICE lodged an immigration detainer against Gillies, and that detainer is no longer serving a notice function, but rather is the reason why Gillies is being confined indefinitely; (2) Gillies is subject to a final order of removal, and has been paroled, so BICE is required by law to take him into physical custody; (3) Gillies was paroled, and but for the BICE detainer, the DOC would have processed Gillies' release plan; (4) BICE has had the power to lawfully pick up Gillies since June 1, 2005; and (5) BICE cannot defeat jurisdiction by using the state as its custodial agent.

A.  The Custody Requirement for Habeas Jurisdiction

The Second Circuit has held that "a jurisdictional prerequisite for the granting of a writ of habeas corpus under 28 U.S.C. § 2241 is that the petitioner be 'in custody.'" *Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003).  The relevant provision of section 2241 provides that the "writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "A writ of habeas corpus functions to grant relief from unlawful custody or imprisonment and must be sought against the authority that has custody of the petitioner." *Bell v. United States I.N.S.*, 292 F. Supp.

2d 370, 373 (D. Conn. 2003) (citing *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir.1988)).

The authority that has "legal" custody of the petitioner, sufficient to confer subject matter jurisdiction over that custodian, is not always the authority in whose physical custody the petitioner is found.  *See Bell*, 292 F. Supp. 2d at 373 (citing *Simmonds*, 326 F.3d at 351); *Vargas v. Swan*, 854 F.2d 1028, 1030 (7th Cir.1988).  That is because "history, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty" that an entity can use to exert custodial power over an individual.  *Vargas*, 854 F.2d at 1030 (citing *Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963)).  "[C]ourts have long recognized that the writ is available to those who, although not actually imprisoned [by the custodial authority], suffer such a curtailment of liberty as to render them 'in custody.'"  *Simmonds*, 326 F.3d at 354 (citing *Jones*, 371 U.S. at 239-40).

B.  Application of the Custody Requirement to Gillies

For the following five reasons, I conclude that Gillies is in the custody of BICE for purposes of subject matter jurisdiction over his habeas petition.

> 1. BICE lodged an immigration detainer against Gillies, and that detainer is no longer serving a notice function, but rather is the reason why Gillies is being confined indefinitely.

The Second Circuit has not decided the question whether the lodging of an INS detainer against an individual, standing alone, is sufficient to establish the requisite custody for habeas purposes.  *Simmonds*, 326 F.3d at 354 (recognizing that the majority of circuits have held that the filing of a detainer, alone, does not create custody in the INS but declaring that "our circuit has not yet resolved the issue").  The *Simmonds* court explained that in *Roldan v. Racette*, 984 F.2d 85, 88-89 (2d Cir. 1993), the Second Circuit noted the majority and minority views on the issue

but did not actually reach the question, because it decided the case on other grounds. Even if the Second Circuit adopted the majority view, the detainer against Gillies is not "standing alone."

Both the Supreme Court and the Second Circuit recognize custody in a future jailor where "the immediate custodian, through the lodging of a detainer, was acting as an agent for the future jailor by holding the prisoner pursuant to the detainer." *Simmonds*, 326 F.3d at 355 (citing *Maleng v. Cook*, 490 U.S. 488, 493-94 (1989)). Specifically, the Second Circuit recognizes custody in a future jailor where "there is a reasonable basis to apprehend that the jurisdiction that obtained the consecutive sentence will seek its enforcement." *Simmonds*, 326 F.3d at 355 (quoting *Frazier v. Wilkinson*, 842 F.2d 42, 45 (2d Cir. 1988)).

The critical question in determining whether BICE has a state prisoner in its custody is whether there is a reasonable basis to conclude that BICE will take physical custody of the prisoner upon his release from prison. *Id.* at 356. It is reasonable to conclude that BICE will take physical custody of Gillies, because Gillies is subject to a final order of removal as well as a detainer. Indeed, BICE is required to take physical custody of Gillies upon his release from state prison. 8 U.S.C. §§ 1231(a)(1)(B)(iii), 1231(a)(2) (mandating detention when the ground for removal is the commission of an aggravated felony or a crime relating to a controlled substance). *See Simmonds*, 326 F.3d at 356.

In its response to my order to show cause, BICE emphasized at great length that the purpose of lodging an immigration detainer is to notify prison officials that BICE has an interest in a particular prisoner, so that the prison officials will in turn notify BICE when the detained prisoner is about to be released from confinement, so that BICE can make a decision about the prisoner's deportation status at the time of release. *See, e.g.*, *Roldan*, 984 F.2d at 88; *Dearmas v.*

*I.N.S.*, 1993 WL 213031, 3 (S.D.N.Y. 1993) (holding that the detainer provides notice that the INS will seek custody at the conclusion of the prisoner's current confinement in the state jurisdiction); *Campillo*, 853 F.2d at 595; *Lepez-Mejia v. United States I.N.S.*, 798 F. Supp. 625, 627 (C.D. Cal. 1992); *Orozco v. United States I.N.S.*, 911 F.2d 539, 541 (11th Cir. 1990).

In this case, the INS lodged an immigration detainer against Gillies in February 2003. At that time, the detainer notified the DOC of INS' intent to seek custody of Gillies at a future date. The detainer's title, "Immigration Detainer-Notice of Action," indicates that its purpose is to require the DOC to provide BICE with notice before releasing a prisoner subject to an immigration detainer. *See* Government's Response to Order to Show Cause, Exhibit D. The detainer also provides that the DOC must hold Gillies for 48 hours once he becomes eligible for release, so that BICE has an opportunity to take physical custody.

On June 1, 2005, pursuant to the Board of Parole's official determination, Gillies was approved for release on parole. The DOC promptly notified BICE that Gillies was voted to parole and eligible for release. The notice purpose of the immigration detainer was thereby wholly fulfilled. Not only did the DOC receive notice of BICE's interest in Gillies, but the DOC in turn notified BICE that Gillies was eligible to be released.

BICE now argues that Gillies is not in BICE custody, because the detainer is for notification purposes only. However, that argument fails now that all interested parties have been notified of Gillies' status. The point of the detainer's notice function is to inform BICE that a prisoner is *about to be* released. *Roldan*, 984 F.2d at 88-89 (emphasis added). Gillies was to be released, or at least was to begin the process of release, on June 1, 2005. Until June 1, 2005, BICE could argue that the detainer was merely serving as notice of BICE's future interest in

Gillies. However, more than six months have now passed. Thus, the detainer is no longer merely providing notice of an interest to take Gillies into BICE custody. Given the representations at the November 18 hearing, I find that the detainer is the reason why the DOC is still holding Gillies; as a practical matter, the detainer is now being used as a tool of confinement. The fact that Gillies is physically housed at Osborn Correctional Institution, a Connecticut State Institution, cannot alter the reality that the detainer is what is keeping him there.

> 2. *Gillies is subject to a final order of removal, and has been paroled, so BICE is required by law to take him into physical custody.*

In analyzing whether Gillies is in custody for habeas purposes, the issue is not whether "the lodging of the immigration detainer, standing alone, constitutes habeas jurisdiction," because in this case, there is more than the mere lodging of a detainer.[6] Here, Gillies has been granted

---

[6] The case law holding that the lodging of an immigration detainer, standing alone, does not give rise to present confinement of a prisoner by BICE often refers to the situation where BICE lodges or files the detainer against a prisoner who is not yet eligible for release; those decisions do not apply here, where BICE is using the detainer as a tool of confinement against a person who would otherwise be released. *See, e.g.*, *Roldan*, 984 F.2d at 88 (suggesting that petitioner was not in INS custody where INS detainer had been filed against him but where he was not otherwise eligible for release); *Campillo*, 853 F.2d at 595 (determining that petitioner was not in INS custody when INS filed a detainer against him but he was otherwise ineligible for release); *Orozco,* 911 F.2d at 541 (holding that petitioner was not in INS custody where INS had filed a detainer but petitioner was not otherwise eligible for release); *Fernandez-Collado v. I.N.S.*, 644 F. Supp. 741, 742 (D. Conn. 1986) (emphasizing that the prisoner would not even be available for INS custody until after his release from his present term of confinement). The holdings of all of those cases are based on sets of facts in which the prisoner was not eligible to be released from incarceration for the underlying criminal conviction.

Those cases would be relevant only to determining Gillies' status during the period of time from February 2003 to June 1, 2005. Now, however, Gillies is eligible to be released from prison on the underlying criminal conviction. None of the cases cited by BICE address the factual scenario in this case. In *Campillo*, the Eighth Circuit held that "The filing of an INS detainer, *standing alone*, does not cause a sentenced offender to come within the custody of the

parole and is subject to a final order of removal.

In *Simmonds*, the Second Circuit held that a petitioner, while serving a criminal sentence in a New York state prison, subject to an INS detainer, was in INS custody for purposes of filing a habeas petition to challenge his deportation order. *Simmonds*, 326 F.3d at 356. The Second Circuit explained that "[a petitioner's] final order of removal is sufficient, by itself, to establish the requisite custody" under section 2241.[7] *Id.* at 354; *see Ferris v. I.N.S.,* 303 F. Supp. 2d 103, 108 (D. Conn. 2004) (applying *Simmonds* to hold that a petitioner subject to a final order of removal was in INS custody even though he was incarcerated by the state). The Court's reasoning was based on the fact that when a person who is subject to a final order of removal is released from state prison, BICE is required to take him into physical custody. 8 U.S.C. §§

---

INS for purposes of a petition for a writ of habeas corpus." 853 F.2d at 595 (emphasis added). Likewise, in *Orozco*, the Eleventh Circuit reasoned that the INS "has merely lodged a detainer. The filing of the detainer, *standing alone*, did not cause Orozco to come within the custody of the INS." 911 F.2d at 541 (emphasis added).

[7] In *Simmonds*, the petitioner challenged the order of removal itself. BICE, citing *Duamutef v. I.N.S.*, 386 F.3d 172,174 (2d Cir. 2004), has argued that *Simmonds* does not apply to the facts here, because Gillies is not actually challenging his order of removal. However, *Duamutef* actually supports Gillies' position.

In *Duamutef*, the Second Circuit was faced with the issue of custody for habeas purposes. Duamutef was serving a criminal sentence in a New York prison and became eligible for parole, although he was not actually voted to parole. Rather, under the New York system, he was given a conditional parole for deportation purposes only. He filed a habeas corpus petition to challenge the INS' failure to deport him. The Second Circuit did not reach the issue whether Duamutef was in INS custody for purposes of filing the habeas petition, because it ruled on other grounds. However, the district court had determined that Duamutef was not in INS custody, distinguishing *Simmonds*, because Duamutef was not challenging the final order of removal, and reasoning that under *Simmonds*, constructive custody was only available insofar as the petitioner was challenging future confinement. The Second Circuit declined to resolve whether Duamutef was in custody, but the Court was "reluctant to adopt the District Court's holding that the principles driving the *Simmonds* holding could not be extended to a case like Duamutef's." *Id.* at 178.

1231(a)(1)(B)(iii), 1231(a)(2).

Like petitioners in *Ferris* and *Simmonds*, Gillies is subject to a final order of removal. That fact is sufficient to establish that Gillies is in BICE custody for purposes of habeas jurisdiction.[8]  *See id.*  Moreover, in this case, in addition to the final order of removal, Gillies is also subject to a BICE detainer that is being used as the mechanism for continuing to incarcerate Gillies, not merely as a way to provide notice.

> 3. *Gillies was paroled, and but for the BICE detainer, the DOC would have processed Gillies' release plan.*

BICE is restraining Gillies' liberty, because absent its detainer against Gillies, the DOC would have released him from physical incarceration to the civilian community.

The test for whether someone is in custody of an entity, short of physical restraint by that entity, depends on the amount of restriction placed on his liberty.  *Vargas*, 854 F.2d at 1030 (citing *Hensley v. Municipal Court*, 411 U.S. 345, 349 (1973)).  The Seventh Circuit elaborated:

> however labeled, an action that has as part of its effect the "holding" of a prisoner for a future custodian who has evidenced an intent to retake or to decide the prisoner's future status at the end of his or her current confinement serves to establish custody for habeas purposes.

*Id.* at 1032.  I find that the DOC is merely "holding" Gillies for BICE, when it would have otherwise physically released Gillies on parole.  Although in a general sense, parole may not be a

---

[8] The holding in *Bell v. United States I.N.S.*, 292 F. Supp. 2d 370 (D. Conn. 2003), does not apply here.  In *Bell*, the court focused on the impact of the lodging of an INS detainer, standing alone, and did not consider how the petitioner's being "voted to parole" affected custody.  To the extent that the court considered Bell's parole status at all, it did not make specific findings of fact about the relationship between the INS detainer and Bell's eligibility for release from state prison.  Additionally, in *Bell*, the petitioner was not subject to a final order of removal, and that fact was central to the decision.  Here, Gillies is subject to a final order of removal, which provides a measure of certainty that BICE will in fact take Gillies into physical custody.

guaranteed right and is subject to DOC discretion, in the specific facts of this case, Gillies would have been released if BICE had not lodged a detainer against him.

BICE, citing *Duamutef*, 386 F.3d at 179-80, argues that the court lacks jurisdiction, because even though Gillies was paroled, he has not yet been released from state custody. However, the facts of this case are not like *Duamutef*, where the petitioner received a "Conditional Parole for Deportation Only" ("CPDO") pursuant to New York law. The Second Circuit held that a petitioner who received a CPDO was not released from state custody to INS custody for purpose of habeas jurisdiction. *Id.* The Court reasoned that the CPDO is a "special variety of parole" that does not follow the ordinary statutory provisions of parole and only allows for the individual to be paroled to INS custody. *Id.*

The facts of this case, on the other hand, demonstrate that Gillies' parole status follows the ordinary statutory provisions of parole and is not conditioned on him being deported. The purpose of Gillies' parole is not limited to deportation, but is rather aimed at releasing him to the community. For example, Gillies' Conditions of Parole Form provides:

> You are paroled to your Immigration and Naturalization Service (INS) Detainer. If you are deported from the United States, you are not to return. *In the event that the detainer is not effected*, or if you are released from INS authorities prior to the expiration of your Connecticut term, *then you may be released to a full program in the state of Connecticut*.

(Emphasis supplied). Additionally, Gillies' detainer provides that the DOC is to "detain the alien for a period not to exceed 48 hours to provide adequate time for INS to assume custody of the alien." Those two provisions contemplate a scenario in which Gillies would not be deported but rather would be "released to a full program." Gillies' parole is not limited to a parole for deportation purposes only, as was the case in *Duamutef*, and therefore he has been released from

state custody for purposes of habeas jurisdiction.

>   4. *BICE has had the power to lawfully pick up Gillies since June 1, 2005.*

Whether or not BICE was required to remove Gillies as of June 1, 2005 is not relevant to the jurisdictional issue of whether Gillies is in BICE custody.  BICE argues that because 8 U.S.C. § 1228(a)(3)(B) provides that "nothing in this section shall be construed as requiring the Attorney General to effect the removal of any alien sentenced to actual incarceration, before release from the penitentiary or correctional institution where such alien is confined," it is not required to physically pick up Gillies until he is released from prison.

However, that argument goes to the merits of the petition, not the jurisdictional issue. The fact of the matter is that BICE has been notified that it could lawfully pick up Gillies since June 1, 2005.  BICE chose not to pick him up at that time or during the more than six months since June 1.  As a result of that choice, the DOC continued to keep Gillies incarcerated because of the detainer and did not begin the process of approving his release plan.  BICE cannot now argue in good faith that Gillies is not in its custody, merely because Gillies has not actually been released to the streets, because the reason why Gillies has not been released is because BICE chose not to pick him up.  BICE does not need to wait until Gillies is physically outside prison walls to have the legal authority to pick him up, and BICE acknowledges that it did have the legal authority to pick up Gillies as of his June 1, 2005 parole date.

>   5. *BICE cannot defeat jurisdiction by using the state as its custodial agent.*

At the November 18 hearing, BICE argued that the detainer is not the only mechanism keeping Gillies in prison, because Gillies' parole is conditioned on him having his post-release residence approved.  BICE also argued that it cannot pick up Gillies, because even though he has

been voted to parole, the DOC has not approved his release plan, so he has not been physically released, and therefore is still serving his state criminal sentence. Finally, BICE argued that the DOC is free to physically release Gillies since it complied with the terms of the detainer.

The problem with accepting those arguments is that they would require this court to sanction a legal "catch-22." That is to say, Gillies was paroled, and in the ordinary course, but for the immigration detainer, the DOC would have released him on or around June 1, 2005. BICE cannot avoid becoming Gillies' custodian by indefinitely choosing not to take Gillies into physical custody, when the DOC is keeping Gillies in physical custody only because of the BICE detainer. In short, BICE cannot circumvent Gillies' rights by using the Connecticut DOC as its custodial agent. *See Waldron v. I.N.S.*, 17 F.3d 511, 516 (2d Cir. 1993). In *Waldron*, the INS held deportation hearings in the petitioner's state prison, and then claimed that the petitioner was not subject to certain protections that he would have received if he was in "INS custody" for purposes of the hearing. *Id.* The INS argued that the petitioner, who was in the physical custody of the state prison and had an INS detainer lodged against him, could not challenge the INS' actions because he was not in INS custody for habeas purposes. *Id.* The Second Circuit flatly rejected INS' attempt to perpetrate a legal fiction and held that the petitioner was in INS custody, because by the very nature of the INS' actions, it had done more than simply lodge a detainer against the petitioner. *Id.* The INS could not circumvent the prisoner's rights by acting through a state agent. *Id.*

Where, as here, BICE in fact controls Gillies' liberty, it cannot escape legal accountability by using the DOC as its agent. *See id.* The case law, the specific facts of this case, and fundamental fairness demand otherwise.

**III.     Conclusion**

For purposes of Gillies' habeas petition, he is in custody of BICE, thereby giving this court subject matter jurisdiction. I will reserve deciding the merits of Gillies' petition for writ of habeas corpus (doc. # 1) until December 23, 2005, in light of BICE's representations that it is seeking to deport Gillies expeditiously.

It is so ordered.

Dated at Bridgeport, Connecticut, this 6th day of December 2005.

                                              /s/ Stefan R. Underhill
                                                Stefan R. Underhill
                                                United States District Judge